The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Telephone: (646) 666-8262; Fax: 1-(877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com



JUNE 30, 2017

Re:   <u>Dejesus, et al. v. City of N.Y., et al.</u>, No. 16 Civ. 3709 (FB) (RML)

Dear Judge Levy:

     I represent Plaintiffs Steven Dejesus, Jonathan Martinez and Axel Garcia in the above-referenced Section 1983 police misconduct litigation.  I write to move the Court for an Order compelling Defendants to produce certain material in discovery.   We have conferred about the dispute, some by telephone and some through deficiency letter and emails.  In the event the Court would like to set a conference, the Parties have identified July 12 and July 13 as mutually agreeable dates.

    I.     **<u>Brief background facts.</u>**

     The following facts are drawn from the allegations in Plaintiffs' complaint, as well as the record to date.  At about 10:00p.m. on June 18, 2015, Mr. Martinez was driving in Brooklyn with Mr. Dejesus and Mr. Garcia as passengers.  Plaintiffs noticed a police vehicle following them closely, but they did not know why.  When Mr. Martinez stopped to drop Mr. Dejesus off at his home, the police vehicle slowly passed Mr. Martinez's vehicle.  Moments later, Defendants stopped the vehicle and arrested Mssrs. Martinez and Garcia for an assault that had happened nearby, despite witnesses stating that they were not involved.[1]

     Defendants then went to where they had seen Mr. Dejesus disembark from Mr. Martinez's vehicle, and arrested him as well.  At the precinct, roughly ten hours later, Defendants voided Mr. Martinez's and Mr. Garcia's arrests, and released them.  However, Defendants declined to release Mr. Dejesus despite their own observations that the three Plaintiffs were together that evening.  Defendants forwarded false information to the DA's Office that commenced a criminal proceeding against Mr. Dejesus, placing him with two non-parties—J.C. and L.P—who were investigated and arrested for the assault in a different part of Brooklyn and under different circumstances.  Later, a third non-party—E.M.—was arrested and charged on a different instrument.  Mr. Dejesus spent roughly thirty-eight (38) hours jailed without cause before arraignment, then more time after arraignment before he met bail.  A state court judge later dismissed the charges before grand jury presentment.

    II.     **<u>Plaintiffs' need for the non-parties' information outweighs Section 160.50 interests.</u>**

     Plaintiffs ask that the Court direct Defendants to produce relevant non-party information, which Defendants withhold claiming Section 160.50 protection.  When confronted with such disputes, "[f]ederal courts commonly order production of documents sealed pursuant to Sections 160.50 or 160.55[.]"  <u>Crosby v. City of N.Y.</u>, 269 F.R.D. 267, 274 (S.D.N.Y. 2010).  "Questions of privilege in

---

[1] On information and belief, Defendants stopped Martinez's vehicle because a vehicle of a similar make had been at the scene of the assault.  However, on information and belief, the vehicle Defendants were looking for had a smashed-out window (individuals with the assault victim had smashed it), while Martinez's vehicle was very readily distinguishable because, among other things, its windows were intact.

federal civil rights cases are governed by federal law," and "[r]ather than apply state privilege law to a federal civil rights claim, the magistrate must vindicate the purposes of federal discovery and privilege law." King v. Conde, 121 F.R.D. 180, 186-87 (E.D.N.Y. 1988). In making a claim of privilege in the allegedly sealed materials, Defendants "must do more than alert the court to the state privilege law or the generalized policies which support it." Id. A court then balances the movants' need against the non-movants' claimed interests.

On one side of the scale, Plaintiffs have a substantial and particularized need for the non-party information because Defendants arrested Plaintiffs under one set of circumstances, despite indications that there was no cause to do so (witness statements that they were not involved, and the fact that the window to their vehicle was not smashed out), while the non-parties were arrested in a different part of Brooklyn after investigation and apparent witness identification. Plaintiffs' need for the non-party information is thus based on preliminary facts already known from discovery about the disparate circumstances under which police encountered and pursued each of these two groups of arrestees, and the request thus seeks comparative information that is material to Plaintiffs' federal civil rights claims. See Atwell v. City of New York, No. 07 Civ. 2365 (WHP), 2008 WL 5336690 (S.D.N.Y. Dec. 15, 2008) (noting that a plaintiff's need for discovery is weightier when particularized).

On the other side of the scale, Defendants' rote invocation of Section 160.50 fails to explain why the production of those records would per se cause the non-parties to suffer any stigma "flowing from [the] accusation of criminal conduct[.]" People v. Patterson, 78 N.Y.2d 711, 716 (1991) (stating that Section 160.50 sealing protects an exonerated person's employment and education prospects, among other things). Plaintiffs argue that no such stigma is threatened here such that their need for the information prevails for at least three reasons. First, in light of the Court's Confidentiality Order, the Parties are required to treat the information with care under penalty of contempt. Second, and relatedly, Plaintiffs have already known some information about the non-parties for more than two years without causing any known stigma. Finally, "it is the perpetrators of [the federal civil rights abuses alleged in this case], and not their victims, who would be stigmatized" if the information were disclosed. Woodard v. City of N.Y., No. 99 Civ. 1123 (ILG), 2000 WL 516890, at *5 (E.D.N.Y. Mar. 10, 2000).

In conclusion, Plaintiffs request that the Court direct Defendants to produce non-party information, noting that whatever privacy interests Section 160.50 sealing might generally seek to promote, the Confidentiality Order, the history of this case, and the nature of the federal civil rights claims here show that those interests have already been and can continue to be responsibly protected.

III. **Disciplinary files.**

Plaintiffs argue, over Defendants' objection, that they must produce their personnel records including CCRB, IAB and other disciplinary/probationary records.[2] It is now commonplace in the courts of the Second Circuit to require the production of CCRB and IAB files relating to both substantiated and unsubstantiated allegations of similar conduct. See, e.g., Gibbs v. City of N.Y., No. 06 Civ. 5112(ILG) (VVP), 2008 WL 314358, at * 1 (E.D.N.Y. Feb. 4, 2008); Zhao v. City of N.Y., No. 07

---

[2] Plaintiffs note that the CCRB and/or IAB only investigate charges, but that when charges are substantiated, non-CCRB/IAB records detail whether and to what extent discipline was imposed.

Civ. 3636(LAK)(MHD), 2007 WL 4205856 (S.D.N.Y. Nov. 21, 2007); Kitevski v. City of N.Y., No. 04 Civ. 7402 (RCC) (RLE), 2006 WL 680527, at *4 (S.D.N.Y. Mar. 16, 2006); Barrett v. City of N.Y., 237 F.R.D. 39, 40–41 (E.D.N.Y.2006); Pacheco v. City of N.Y., 234 F.R.D. 53, 55 (E.D.N.Y.2006). Moreover, these records should be produced without blanket Section 160.50 or generically-claimed "privacy" redactions, although Defendants may invoke privilege for specific documents as they deem appropriate. See Young v. City of N.Y., No. 10 Civ. 1701 (RMB) (THK), 2010 WL 3938372, at *2 (S.D.N.Y. Oct. 7, 2010) ("The Court is unaware of any case in which the City has claimed, and a court has accepted, that CCRB and IAB files should not be produced because the files are subject to sealing under N.Y. C.P.L. § 160.50"); Zhao, 2007 WL 4205856, at *2 (holding that complaints and the underlying information is discoverable).

IV. **Records not in dispute.**

Plaintiffs also request pursuant to FRCP 37 that the Court compel Defendants to produce certain categories of information that do not appear to be in dispute by the Parties, but the delayed production of which complicates Plaintiffs' ability to depose Defendants. These records include the balance of Defendants' performance evaluations (a subset have already been produced); Defendant and other NYPD member memo books relating to the incident and arrests[3]; Plaintiffs' pedigree cards; property and evidence vouchers and underlying chain of custody and evidence examination records[4]; names and service/contact information for witnesses C.C., V.A., and E.M., the ADA who worked on Mr. Dejesus's case, dispatch operator 361226; statements (audio, video, written other) made by witnesses Justin N., Vanity A., Coral C., Edwin M., Divine M., and Dante A. in connection with the incident (including but not limited to identification paperwork referenced in detectives' DD5's); 911 recordings; copies of surveillance and/or photographic evidence from the scene of the incident; and records relating to the dog unit/PDU's early involvement.

I thank the Court for its consideration of this letter motion to compel records pursuant to FRCP 37 and the Local Rules. In the event the Court would like supplemental or full briefing on any of the herein listed subjects, Plaintiffs will be ready to provide it.

Sincerely,

*Ryan Lozar*

Ryan Lozar
Attorney for Plaintiffs

---

[3] Plaintiffs have identified at least the following Defendants/officers to Defendants as memo books that they seek: Delossantos, Cespedes, Spencer, Alfonzo, Espinal, Reilly, Pettiford and Rodriguez. For Rodriguez, a partially illegible copy has already been produced; no memo book entries have been produced for the other Defendants/individuals.

[4] For example, records relating to a knife and/or vehicles seized in connection with the assault.